for the second district is now open. The Honorable Justice George Bridges presiding, along with Justices Catherine E. Zinoff and Joseph E. Burkett. The case is number 2-19-0011. People of the State of Illinois, Plaintiff Appellee v. John D. Daniels, Defendant Appellant. Arguing for the Appellant, Melissa A. Murphy-Petros. Arguing for the Appellee, John G. Barrett. Ms. Murphy-Petros, are you ready to proceed? Yes, I am, sir. You may proceed. Thank you. Good morning, Your Honors, and may it please the Court, Melissa Murphy-Petros on behalf of the Defendant Appellant, John Daniels. Mr. Daniels requests reversal of his conviction for criminal trespass to a residence, and a new trial for three reasons. First, the jurors asked for, but did not receive, instruction on the legal meaning of the phrase, without authority, as it is used in the offense charged. It is undisputed that Mr. Daniels entered Jennifer White's home on August 26th of 2017, and that he did so knowing that Quentin Erdahl was present at the time. The only issue for the jury was whether or not Mr. Daniels had authority to enter the home, and the jury clearly understood this, and this is demonstrated by the note that the jury sent out during deliberations. I'm sorry to interrupt you, but you brought up, actually, the first topic that I wanted to talk about, which has to do with counsel for defendant indicated that she had no objection to the proposed response to the jury's question. Isn't that correct? She was asked specifically by the trial judge, and she said she had no response. By affirmatively stating that she had no objection, didn't she acquiesce in the court's response, and in essence, wasn't that invited error, which precludes any plain error analysis here? Yes, she did not object to the court's response. This is, of course, one of our claims for ineffective assistance to counsel. This court ruled in People v. Brandt in 2009 that any person with an ownership or possessory interest in the property may give authority, and certainly, Quentin Erdahl meets that definition. There's really no reason why she could not have asked the circuit court for five or ten minutes to run to her office or to call someone. A quick Lexis search would have found that case. We do maintain that it's plain error, but your point is, of course, well taken, yes, but if he doesn't get a trial on the grounds of plain error on this issue, certainly, it is a rock-solid basis for ineffective assistance of counsel. There's really no reason she should not have found Brandt, that she should not have raised this as a defense throughout the case that someone other than Ms. White could give him authority to enter the home, and Erdahl's testimony, he's the only testimony that describes the offense for which Mr. Daniels is charged. He certainly was, I think, did that by allowing Daniels to enter the home, so it was ineffective assistance of counsel requiring a new trial. Well, but when we're talking about Erdahl could have given permission, either explicit or implicit, is one theory, but why isn't it a reasonable theory? Why wasn't the theory she used reasonable? That is, the nature and context of their relationship. It was, in essence, on again, off again for a period of weeks. Why wasn't that equally reasonable? I think it was a reasonable defense that the two defenses are not exclusive of each other. What was reasonable is to raise the one without raising the other that is grounded in this court's case law. I mean, clearly, the jury believed or at least suspected that Erdahl could have given him authority to enter the home. That's why they sent that note out during deliberations, so I think the ineffective piece was to not raise the Brandt defense in addition to the defense that was raised. And you think that fell below the reasonable standard of representation? Yes, I certainly do. I think when you have two valid defenses, particularly one that is grounded in controlling authority from this court, stating very plainly, anyone with an ownership or possessory interest can give authority, and we have Erdahl's testimony that when Mr. Daniels showed up, he was not asked to leave. In fact, the two spent a couple of hours drinking coffee and talking. I think that to not raise that as a defense certainly precluded a potentially more reasonable and more beneficial outcome for Mr. Daniels. Well, is that the standard of reasonable? I mean, what about the issue of prejudice? How was the defendant actually prejudiced by counsel's, well, let's say, failure to either use that defense or give a different answer to the jury than the court gave, to request that the court give a different answer that would have talked about the authority or who had the authority to allow entry into the home? Well, he was prejudiced because she did not advance a defense that could have resulted in his acquittal. And I think the jury's note tells us it may very well have resulted in an acquittal, pardon me, because they keyed right in on that, that Erdahl is the only person who testified regarding what happened. And Erdahl's testimony demonstrates that he allowed Mr. Daniels to enter the home twice in the course of the two hours that they spent talking and drinking coffee on the court. So to not advance a defense that's available, that's grounded in the facts and in the law certainly deprived Mr. Daniels of a reasonable chance of a better outcome. And I think that's particularly so when you combine this with the failure to admit defense exhibit 5.5 for impeachment purposes only. That was the series of text messages between Mr. Daniels and Ms. White, which included one sent on August 25th, in which I'm paraphrasing, she said to the effect, you know, we're done, don't come over here or I'll argument on the post judgment motion that she intended to admit that for impeachment only, and that she intended to request the appropriate jury instruction. But the fact is that she did not do that. And so both the state's attorney and the circuit court judge in denying defendant's motion for directed verdict, and the jury, of course, were able to rely on that final text as substantive evidence. I think that dropping the ball there, combining with not raising the grant defense. And then finally, you know, the way that the defendant was described by the state's attorney during closing argument on rebuttal, she did not do that. And you know, this is not this is these are quotes as fixated, obsessed, jilted, jealous, spurned, angry, upset, possessive. I mean, all of that had nothing to do with the offense for which he was charged. And I think failing to object to that may have lent some credence in the eyes of the jury. And so let me ask you with respect to that, why isn't fixated, obsessed or jilted characterizations of the defendant reasonable in light of all of the text messaging that he you know, in this persistent effort to try and contact Ms. White? Why isn't that reasonable? Well, it's not it's unreasonable, because again, this offense is not a crime of intent, it is complete upon entry. This is also discussed in people versus brand, it is complete upon entry into the residence. The reason for the entry does not matter. And so isn't the state given wide latitude to make reasonable inferences in their arguments regarding the evidence? Yes, of course they are. But I think that latitude does have some boundaries. And one of those boundaries, of course, is the offense for which Mr. Daniels was charged. And given that it's not an offense of intent, the reason why he was there and whatever else may have been going on in his mind is not relevant. And by using this kind of language, I think that definitely implies to the jury that that those kinds of motivations could be relevant. And so that's why it was defense counsel's obligation to object to those comments at the time that they were made. And of course, that that did not happen. When you read, when you read all the text contamination, isn't it reasonable to infer that in those text was telling him only I can authorize you entry into the premises? I'm sorry, could you repeat your question? It cut out just a little bit. If you read all the text messages in combination, isn't it a reasonable inference that Ms. White was telling him only I can authorize you entry? Yes, yes, that is a reasonable reading of the text messages. But that is not the law. The law set out in People v. Brandt is that authority is not limited to the owner. Authority goes to anyone with a quote, ownership or who's 19 years old and a permanent occupant of the property could have given Mr. Daniels the authority to enter on the day that he did. And again, I think this also then ties into the fact that all those text messages were intended to be admitted for impeachment only, but then she did not request that or request the appropriate instruction. And so then they were considered a substantive evidence. They weren't redacted either. I mean, she knew there was a request that they'd be redacted and refused that. Isn't that correct? That's correct. So then she made the motion even knowing that the text messages were not redacted. Yes. Could she not during her cross examination of White? She tried to bring out the fact that the defendant was that there was no response from White to these messages. Wouldn't that have been sufficient? Did she have to actually introduce all of these text messages, especially the 5.5, Exhibit 5.5, which of course contained this one other section. Did she need to have those introduced to make the point? I don't think so. No, I think she did make her point in cross examination without introducing them. That said, you know, had she introduced them with the appropriate request and the jury instruction that they be introduced for impeachment purposes only, that certainly I think could have made all the difference in the world. But I don't think that they were absolutely necessary. And explain the impeachment then, please. When you say it could have been introduced for impeachment purposes, what is your argument with respect to that? Well, defense counsel at the argument on the post judgment motion stated that she intended to put that exhibit in to impeach Ms. White's credibility. To kind of, you know, Ms. White had testified on direct that, you know, she's done with this guy and she never wants to see him again. And I believe the strategy that defense counsel was looking at was to say, look at all these text messages. They're on again, they're off again, they're talking. She says she doesn't want to talk to him and then she talks all the time and that kind of thing. I think that's what she was getting at was to impeach Ms. White's credibility. I don't think that that was necessary. Personally, I don't know that I would have advanced that. But nevertheless, she did state in the post judgment argument that she intended them to be admitted only for this impeachment purpose and that she had intended to request jury instruction at telling the jury that this was impeachment evidence only. She did not do that. So of course, whole thing then goes in unredacted as substantive evidence and is argued by the state's attorney, you know, in closing and relied upon by the judge when he denied the motion for directed verdict at the close of the state's case. The final issue I'll touch on very briefly. The third reason Mr. Daniels we maintain is trial is the erroneous admission of other bad acts evidence. This is Ms. White's extensive testimony about the August 4 trip to the Wisconsin Dells that apparently went very much awry. Yet she was allowed to give that testimony over defense counsel's objection, defense counsel objected to this correctly. I'm sorry, I apologize for interrupting you. I would ask you is why isn't White's testimony regarding her interaction with the defendant during and after their trip to Wisconsin Dells, providing context to White's text messages that the defendant was no longer welcome on August 4. Right. A couple of reasons. First of all, the Wisconsin Dells trip took place on August 4 of 2017, which is three weeks before the offense on August 26. You can't hear us, you broke, okay, continue. I decided to break up with him permanently on August 23rd. I'm sorry? You're breaking up and we're finished. Much more limited purpose than what they were. Let me just ask a follow up related to that question if I could. Is your contention that all of White's testimony regarding the Wisconsin Dells constitutes bad acts or just the part where the phone was broken? I think all, well, I think all of it. Certainly, she's describing, I guess, a temper tantrum about a roller coaster and then he huffs off and she is talking about, you know, I spent the whole day chasing him and then she finds him hitchhiking on the highway trying to get back to Illinois. I think the whole thing together constitutes bad acts, evidence that should not have come in. Well, this is a domestic situation, right? So if he had been charged with an act of domestic violence, all that kind of misconduct, correct? Yes, yes. And instead, he was charged with, you know, an offense that is not a crime of intent. That's right. And we look to that statute though in evaluating the relevance of that prior conduct to show the context of the relationship, why the defendant went back, why he would go into the home. The criminal trespass to a residence is not a crime of intent. It's complete upon entry into the home. And the second district said specifically that it doesn't matter why he entered the home. If he did it without authority and another person was there, it's done. All right. Thank you, Ms. Murphy-Petro. Your time is up now. Does either or do any, either one of the justices have any additional questions? I do not. Ms. Murphy-Petro said the end of Appley's argument, you will have an opportunity for rebuttal. I hope you can hear us. You appear to be frozen. Judge Bridges, can we take a break and have Jeff contact her by phone? Sure. We'll take, so... Thank you. Everybody is back. So, Ms. Barrett, you may begin your argument. Thank you. Good morning, Your Honors. Counsel, may it please the court. Referring to Justice Zinoff's comment earlier about waiver, I think I'd like to just jump into issue one and focus on that. In the state's brief, we had quoted People v. Reed, which addressed that precise, this precise scenario. It says, where a defendant acquiesces in the circuit court's answer to the jury's question, the defendant cannot later complain that the circuit court abused its discretion. These waiver rules serve at least two purposes. First, timely objections allow the circuit court to promptly correct any error. Second, a party who fails to object cannot obtain the advantage of receiving reversal by failing to act. Here, you have defense counsel being given an opportunity to draft a response to address the question. The court offered a response that they had agreed to, and, you know, they certainly acquiesced here. So, I would argue that there was waivers. When you use the term acquiesce, are you referring to the invited error doctrine? The invited error doctrine would apply here. That actually goes beyond waiver. But yes, waiver principles, you know, correspond with the invited error rule. Well, how would that affect their attempt to ask us to proceed with regard to a plain error analysis? It wouldn't. We had argued in our brief that should this court find that the waiver rules don't apply, and we look at this for the merits, there was no error in the instruction in this case because what you find is it's not a legal question. This is actually a factual question about who has authority. The legislature was silent about that word. I apologize for interrupting you, so while it may be precluded by the plain error rule, it doesn't preclude a review under a claim of ineffective assistance of counsel. And isn't it the prejudice here clear that the jury may have misunderstood the law and believed that only the homeowner could grant someone permission to enter? In fact, the defendant waited to sneak into the house. He never sought Erdahl's permission, and he had, in fact, shown up and given a pretextual response to him about why he was there. I thought when Erdahl saw him in the house, he talked about he wanted to be nice, you know, and polite. So there was never any, I mean, can't we, in fact, as the jury may have inferred from the evidence that he was invited in, he was authorized to be in the home? No, no. Erdahl testified that he was uncomfortable with the defendant's presence on the porch when he approached initially. They sat outside, and after about a half hour, Erdahl went inside to grab a cup of coffee, and he didn't hear the front door open, but the defendant had snuck inside. He didn't tell him to leave? I'm sorry, can you hear me? What's the evidence? So the front door is right next to the kitchen, and Erdahl was home alone. He said it was quiet in the house and did not hear the front door open. He also testified that he didn't give him permission to enter the house. He didn't give him authority to enter, and the defendant didn't seek his permission to enter or follow behind him. He didn't tell him to leave? Right. He didn't tell him to leave. The second entry, when the defendant goes upstairs and asks to use Erdahl's phone, this is a 19-year-old kid who's uncomfortable. He said he wanted to go upstairs and leave him on the front porch so he would take the hint and leave. The defendant didn't take the hint. He went into the home. He asked to use the kid's phone. The kid was uncomfortable. The defendant had actually stated that if Jennifer White, the owner of the residence, was seeing her ex-boyfriend, he'd have to kick her in the face. So you have a guy that's making intimidating comments. The kid is uncomfortable. He's not willing to be assertive. This is obviously a situation where he's taking advantage. Willing to be assertive is different. I mean, based on these facts, certainly a reasonable fact finder could have found that he gave implicit permission to enter, even though not explicit. And if the jury found that there was implicit permission by Erdahl but yet was instructed that the only one who could give permission to enter the home was the homeowner, wasn't then the defendant convicted based on this erroneous belief and instruction? No. And I think defense counsel was very keen to see whether or not you argue that Erdahl has that authority, opens the door for the state to show that the defendant is taking advantage of this kid. And there's plenty of argument to make that he was intimidating the kid. And the defense counsel avoided those kinds of arguments and focused on the relationship with the victim and their course in dealing and their behavior and conduct. That was a reasonable choice. In rebuttal, the state argued that only Ms. White would give authority, correct? Correct. Was that an accurate statement of the law? No. Under those circumstances, yes. Erdahl wasn't able to give authority to enter because he had been lied to. People versus grant and people versus banks from this district provide that an adult with access to the premises or who essentially lives on the premises has the authority to open the door, correct? That would be correct under the appropriate circumstances. What's the appropriate circumstance? What are you talking about? The consent in this case would have been vitiated by defendant's lying. The defendant said that he was there to seal coat the driveway. That was a lie. And he also withheld the fact that Jennifer said, don't come here, I'll call the cops. He told her, if she had told him, if you come to the residence, I will call the police. And she had a superior interest in the property. She's the homeowner. He withheld that information. He knew that the homeowner gave him a directive that if you come here, I'm going to call the police. And that would be analogous to banks where parents would approve the consent of the Yeah. Mr. Barrett, isn't it obvious that the jury picked up on the state's closing arguments by submitting the jury question and thereby believing that Ergo had granted authority to enter? Isn't that obvious when we see that during the question? Well, a lot of times, juries will go down a rabbit hole, you know, they might get steered in the wrong direction. And by not answering that question, the court was focusing the jury on the evidence that was presented. The relationship with the homeowner with Jennifer White, and her grant of authority to the defendant, based on their past relationship and conduct, that was only source of authority in this case. Well, let me ask you this, did White ever testify that she expressly banned defendant from entering her home after August 23? On August 25. She sent she sent the final text. That's the text message at 503. Is that right? Exhibit 5.5. That was the very last text. I'm sorry, go ahead, Justice. I was following up on what you were talking about, Justice Bridges. That is the text message that was argued as the single most significant piece of evidence of defendants' lack of authority. Isn't that what was argued? The state argued that, yes. Right, right. The state argued that in their an objectively reasonable defense counsel have filled this important gap in the state's evidence by introducing this text message. Well, first of all, the defendant wasn't really filling a gap because the testimony had already been elicited from the victim. She had already testified to the texts independent of the text coming in. She did not testify to this that she did not testify to this particular portion in Exhibit 5.5. She was questioned about a lot of different parts of the text, but not specifically asked about that one. I mean, she testified generally that she had not given him consent after she broke it off the before the Corn Festival when she went up to the Corn Fest. So that is insinuating. Again, I apologize. Didn't she allow him to come back to the property to pick up his property? And she left his sweatshirt on the porch. But she allowed him to come back to the property, correct? Not into the home. And he always respected the threshold while they were together. He had never, he always waited in the driveway while they were dating. He never came to the residence uninvited, and he never crossed the threshold without her express permission. Counsel, what strategic reason might there have been for a defense counsel not to have objected to Exhibit 5.5 going back to the jury? Because she had broken up with him before on August 3rd. This is after the Dells. There was an incident at the Dells. We had argued earlier. And after they got home from the Dells, the defendant was upset because he couldn't stay over at her home that night. He was upset. He threw her phone and broke it in the street because she wouldn't allow him to come inside. And she said, it's over. We're never going to see each other again. You go your way. I'll go my way. And then there was an attempt to try it again, just to see each other and test the waters, per se. So the defense was putting on this on-again, off-again theory. So if Jennifer White had broken it off that definitively before, and then they got back together while here by bringing the he wasn't welcome there. Now the state's response to that is, well, he didn't show up unannounced. He didn't cross the threshold without her being there. And he certainly never lied to a guest to gain entry the way he did specifically during this circumstance. But if he was unsure of whether he had permission after the Dells and up to August 25th, didn't that text message at 5.503 seal the, or wasn't that the answer to the question at that time, she explicitly told him he did not have permission to enter. Correct. Correct. And that's what the state is arguing here is that he should have known because this, this relationship was on a downward spiral through the whole month of August. There were two breakups. They never really had a full reconciliation. And, you know, certainly this last text and his behavior following that text demonstrates, you know, that he, you know, he was definitely breaching. He was definitely the prior course in dealing that they had. All right. But don't her action show that she was ineffective by, by not objecting to this going back. If she was arguing the continuing course of conduct on and off again, but that this text message sealed the deal at 5.03 on August 25th, why would she want the jury to see that? That wasn't the, that wasn't defense counsel's theory of the case. Defense counsel was stating that this has happened before she's broken up with him before. So here, here we go again. She says, you're not welcome in my life. How is he supposed to know? She was she, she meant what she said essentially. Now the state obviously is going to be arguing that, no, we do know from this text, it is definitive because he's texting her 250 times after that. I mean, he's, his texts are spiking. He's lying to the guests. He's showing up unannounced. His behavior is completely out of bounds different than it was prior to he's behaving like somebody that has no control over their ability to, you know, process this breakup. All right. Mr. Barrett, your time is up. I want to thank you. Thank you, your honors. And the, and the state would respectfully request that this court affirm the judgment below. Thank you. Murphy Petros, you may begin your rebuttal. Ms. Murphy Petros, you may begin your rebuttal. Thank you. Respect to Mr. Council as we're having difficulty. Mr. Daniels presence. I'm sorry. You're going in and out. We're having difficulty hearing you. I'm, I am so, I'm so sorry. I'll be very, very fast with respect to counsel's description of Mr. Erdahl as feeling awkward or uncomfortable in the defendant's presence. You know, the jury heard all of Mr. Erdahl's testimony, and yet they still sent out the note asking essentially, could Mr. Erdahl have given the defendant permission to enter the premises? The answer to that question is yes. And the failure to secure a correct answer was ineffective assistance of counsel, along with all of the other items that we've been talking about today with respect to the text message exhibits and whatnot. If you have further questions for me, I welcome them. Otherwise we do request reversal. Do either justice have any additional questions? I do not. And nor do I. The court at this time, thanks both parties for your arguments this morning. The case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate these proceedings.